IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-349-CV




CITIES OF PORT ARTHUR, PORT NECHES, NEDERLAND AND GROVES,



 APPELLANTS


vs.





RAILROAD COMMISSION OF TEXAS AND SOUTHERN UNION GAS COMPANY, 


A DIVISION OF SOUTHERN UNION COMPANY; 


AND SOUTHERN UNION COMPANY,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 92-13139, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 The Cities of Port Arthur, Port Neches, Nederland, and Groves sued the Texas
Railroad Commission in district court for judicial review of the agency's final order in a contested
case decided under the Gas Utility Regulatory Act, Tex. Rev. Civ. Stat. Ann. art. 1446e (West
Supp. 1994) (GURA). See GURA § 8.01. The agency order fixed the gas-utility rates of
Southern Union Gas Company, which intervened in the district-court suit. After trial, the district
court sustained the Commission's final order and the Cities appealed to this Court. See
Administrative Procedure Act ("APA"), Tex. Gov't Code Ann. § 2001.901 (West 1994). (1) We
will reverse the agency order and the trial-court judgment, ordering that the cause be remanded
to the Commission.



THE CONTROVERSY


 The Cities fixed the Company's gas-utility rates in municipal-rate proceedings as
provided in sections 3.01 through 3.04 of GURA, following which the Company appealed to the
Commission for the de novo rate proceedings authorized by section 3.05(a) of GURA. The
Commission consolidated the separate proceedings and, after hearings in October and November
1991, rendered a final order fixing the Company's new rates. The Cities complain of the final
order in the particulars noted below.



COST REIMBURSEMENT


 In GURA section 3.03(a), the legislature provided as follows:



 The governing body of any municipality participating in or conducting
ratemaking proceedings shall have the right to select and engage rate consultants,
accountants, auditors, attorneys, engineers, or any combination thereof, to conduct
investigations, present evidence, advise and represent the governing body, and
assist with litigation or gas utility ratemaking proceedings before any regulatory
authority or in court. The gas utility engaged in those proceedings shall be
required to reimburse the governing body for the reasonable costs of those services
to the extent found reasonable by the applicable regulatory authority.



(Emphasis added). In the Commission proceeding, the Cities claimed a right of reimbursement
under the statute for sums paid and to be paid to the following: (1) the law firm of Butler, Porter
& Gay for work done in connection with the Commission proceeding; (2) the consulting firm of
Diversified Utility Consultants, Inc., for work done in the municipal-rate proceedings and in
connection with the Commission proceeding; and (3) the Cities' respective city attorneys for work
done in the municipal-rate proceedings and in connection with the Commission proceeding. The
Commission, in its final order, found only a part of the costs reasonable and allowed
reimbursement for that part alone. The Cities contend in points of error one through four that the
Commission's action in refusing to order reimbursement for the remainder was arbitrary, not
supported by substantial evidence, and thus a violation of GURA section 3.03(a). See APA
§ 2001.174(2)(A), (E), (F).

 A Commission rule placed upon the Cities a burden to prove the reasonableness
of their rate-case expenses in light of the factors specified in the rule, which provides as follows:



§  7.57.  Allowable Rate Case Expenses 


 In any rate proceeding, any utility and/or municipality claiming
reimbursement for its rate case expenses pursuant to Texas Civil Statutes, Article
1446c, shall have the burden to prove the reasonableness of such rate case
expenses by a preponderance of the evidence. Each shall detail and itemize all rate
case expenses and allocations and shall, in addition, provide evidence showing the
reasonableness of the cost of all professional services, including, but not limited
to, the amount of work done; the time and labor required to accomplish the work;
the nature, extent, and difficulty of the work done; the originality of the work; the
charges by others for work of the same or similar nature; and any other factors
taken into account in setting the amount of the compensation. In determining the
reasonableness of the rate case expenses, the commission will consider all relevant
factors including, but not limited to, those set out previously, and will also
consider whether the request for a rate change was warranted, whether there was
duplication of services or testimony, whether the work was relevant and reasonably
necessary to the proceeding, and whether the complexity and expense of the work
was commensurate with both the complexity of the issues in the proceeding and the
amount of the increase sought as well as the amount of any increase granted.



16 Tex. Admin. Code § 7.57 (1993).



Butler, Porter & Gay


 The Cities jointly engaged Butler, Porter & Gay as their counsel in the de novo
proceeding in the Commission. These attorneys filed in the Commission affidavits showing the
Cities had incurred and would incur a total of $80,000 in costs for the attorneys' work. The
affidavits declared the sums were reasonable and necessary based on the affiants' knowledge and
expertise and the matters referred to in Rule 7.57. The costs incurred by the Cities before
December 10, 1991, were the verified debts the Cities had in fact incurred as a result of the
attorneys' billings before that date. The invoices state in detail the nature of the work done each
day and the amount of time it required. When combined, the invoices reflect the following past
expenses and anticipated future expenses during the progress of the case:



Attorneys' Fees for Past Work:


Mr. Don Butler 139.00 hours at $150/hour $ 20,850.00

Mr. Geoffrey Gay 3.20 hours at $150/hour 480.00

Mr. Steve Porter 232.25 hours at $150/hour 34,837.50


Estimated Attorneys' Fees for Work after December 10, 1991:


 148.31 hours at $150/hour 22,246.19


Case Expenses: 1,586.31


Total 522.76 hours $ 80,000.00



 The Commission found unnecessary a $400 charge resulting from Mr. Butler's
work relating to the Cities' motion for reconsideration and rehearing; and the Commission found
the sum of $22,246.19, estimated for future work in the case, was "too speculative and [it is]
therefore reduced to $3,000," which the Commission reduced further by almost two-thirds to
$1,100 because "the time charged [sic] is excessive for the issues involved in this proceeding." 
(The "charge" for future attorneys' fees in the case was an estimate; it had not been presented for
payment.) The Commission's findings relative to the $3,000 and the $22,246.19 appear to be
superfluous, however, because in a subsequent finding the Commission determined as follows:



In addition to the allowance of $1,586.31 in expenses, it is reasonable to allow
$39,450 for 263 hours charged by the law firm of Butler, Porter & Gay rather than
$78,413.69 for approximately 522.76 hours, the amount originally requested. This
$39,450 includes the reduction of Butler, Porter and Gay's charges for future
estimated expenses.



(Emphasis added). This finding allows the Cities reimbursement for all the attorneys' expenses
and $39,450 in attorneys' fees, while refusing the Cities reimbursement for the remainder of such
costs. Nothing in the Commission's final order explains further why or how the Commission
arrived at its determination that only $39,450 of the attorneys' fees were reasonable. We are
faced then with the stark proposition that the Commission determined as it did based simply on
the fact that it believed only 263 hours of attorneys' work and resulting costs of $29,450 were
reasonable for the case. "We may consider only what was written by the Commission in its order,
and we must measure its statutory sufficiency by what it says." Morgan Drive Away, Inc. v.
Railroad Comm'n, 498 S.W.2d 147, 152 (Tex. 1973).

 The Cities contend they proved their costs for attorneys' fees because the attorneys'
supporting affidavits were uncontradicted, unimpeached, free of any inherent improbability, and
not internally ambiguous or contradictory. The Commission and the Company rejoin that the
Commissioners were the judges of the credibility of the witnesses and the weight to be assigned
their affidavit testimony; the Commissioners were therefore free to reject such testimony in whole
or in part and decide as they did based on their own expertise and examination of the record and
what it showed as to the complexity and difficulty of the relevant issues and the effort and time
reasonably required of the attorneys.

 The issues raised for a reviewing court, when an agency rejects uncontradicted
evidence, are subtle and complex as mentioned in Fuel Distributors, Inc. v. Railroad Commission,
727 S.W.2d 56, 61 (Tex. App.--Austin 1987, writ ref'd n.r.e.). There we held the Commission
might rationally have rejected the uncontradicted opinion testimony of an expert witness because
it confessedly rested, at bottom, on his assumption about what a proper regulatory philosophy
should be--a philosophy not shared by the Commission which had exclusive authority to decide
what the State's official policy would be.

 In the present case the Commissioners simply differed with the conclusions
contained in the affidavits as to what amount of work was reasonable. The attorneys concluded
in their affidavit that 522.76 hours of work were reasonable and necessary in light of the nature
of the case and the relevant issues; the Commissioners reached a different conclusion, inferring
that only 263 hours were reasonably required. This was a secondary inference that could have
been derived from no evidence save the affidavits (there was no other evidence regarding the
matter). The Commissioners did accept the attorneys' conclusions, stated in their affidavits, that
fees calculated on the basis of $150 per hour were reasonable.

 There is no doubt that the Commissioners possessed the power to draw conclusory
inferences different from the conclusions expressed in the affidavits. "`One of the purposes which
lead to the creation of [administrative agencies] is to have decisions based upon evidential facts
. . . made by experienced officials with an adequate appreciation of the complexities of the subject
which is entrusted to their administration.'" Radio Officers' Union v. National Labor Relations
Bd., 347 U.S. 17, 49 (1954) (citation omitted). And a reviewing court may not set aside the
Commissioners' chosen inference on the ground that the court believes another inference more
reasonable under the facts proved. The weight to be attributed to the undisputed facts in the
present case and the inferences to be drawn from those facts, are for the Commission to
determine, not the courts. Corn Prods. Ref. Co. v. Federal Trade Comm'n, 324 U.S. 726, 739
(1945). This does not mean, however, that the inferences drawn by an agency from undisputed
facts are entirely immune from judicial review. "The test in reviewing an agency's inferences is
reasonableness, not rightness, for the reviewing court determines whether the conclusions
`reasonably may be based upon the facts proven.'" 2 Kenneth C. Davis & Richard J. Pierce, Jr.,
Administrative Law Treatise § 11.2, at 191-92 (3d ed. 1994) (quoting Radio Officers, 347 U.S.
at 49). Could the Commission, from the facts proved in the case by the undisputed affidavits,
reasonably conclude that only 263 hours of work were reasonably required? See Radio Officers,
347 U.S. at 49-50. We will apply that test to the present record.

 The affidavits showed without dispute that the Cities had actually incurred as costs
all but the attorneys' fees estimated for future work in the case. The past and future costs were
based on expert opinion explained in detail in the affidavits. The affidavits contain nothing that
is inherently improbable, contradictory, or self-defeating. The only facts relevant to the issue
were the undisputed facts recited in the affidavits. We cannot say, as we did in Fuel Distributors,
that the uncontradicted, unimpeached expert opinion "carries its own death wound." Fuel
Distribs., 727 S.W.2d at 61 (citation omitted). The Commission credited the affidavits in large
part, and differed only in the agency's drawing a different conclusion as to the number of hours
of attorneys' work that were reasonable. The Commission not only rejected the attorneys'
conclusion that 522.76 hours of past and future work were reasonable and necessary, the
Commission found that 263 hours for past and future work were reasonable. And the agency
decided the issue based on that finding. Presumably this finding was based on the
Commissioners' expertise and evaluation of the whole record. But if there is to be judicial review
at all, as to the reasonableness of the Commissioners' determination, then they were obliged in
the present circumstances to place in the record some explanation or reason upon which the
reasonableness of their action might be judged in light of the whole record. They did not do so. 
In the absence of such an explanation or reason, the Commission's inference that only 263 of the
522.76 hours were reasonable is not a conclusion "reasonably supported by substantial evidence
considering the reliable and probative evidence in the record as a whole." APA § 2001.174(2)(E);
see Public Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 212 (Tex. 1991); Texas
Health Facilities Comm'n v. Nueces County Hosp. Dist., 581 S.W.2d 768, 769-70 (Tex. Civ.
App.--Austin 1979, no writ); White Glove Bldg. Maintenance, Inc. v. Brennan, 518 F.2d 1271,
1274 (9th Cir. 1975); National Labor Relations Bd. v. Cutting, Inc., 701 F.2d 659, 663 (7th Cir.
1983); Davis & Pierce, supra, at 189-90. See also West Ohio Gas Co. v. Public Utils. Comm'n,
294 U.S. 63, 68-69 (1935) in which the Court stated as follows:



To make [judicial] review adequate the record must exhibit in some way the facts
relied upon by the court to repel unimpeached evidence . . . . If that were not so,
a complainant would be helpless, for the inference would always be possible that
the . . . Commission had drawn upon undisclosed sources of information
unavailable to others. A hearing is not judicial, at least in any adequate sense,
unless the evidence can be known.



We hold accordingly.



Diversified Utility Consults, Inc.


 These consultants assisted the Cities both in the Commission and in the earlier
municipal-rate proceedings. They filed in the Commission affidavits detailing the sums they had
charged the Cities for their work and the sums they estimated would be required to compensate
them for work done after the date of the affidavits. The consultants explained in their affidavits,
in addition, their conclusion that the past and future charges were necessary and reasonable in
terms of Rule 7.57. The charges may be summarized as follows:



Mr. Jack Pous 193.00 hours at $95/hour $ 18,335.00

Mr. Dal Lawton 76.00 hours at $95/hour 7,220.00

Mr. Ken Bagley 561.00 hours at $75/hour 42,075.00

Mr. Richard Eklund 306.50 hours at $75/hour 22,987.50

Mr. John Baker 209.00 hours at $75/hour 15,675.00

Analysts 79.75 hours at $45/hour 3,588.75

Clerical Staff 98.50 hours at $25/hour 2,462.50

Estimated Future Work 4,000.00

Expenses 5,995.64


Total $122,339.39



 The Commission found the Cities had "not shown by a preponderance of the
evidence that $4,000 [for estimated future work] is reasonable and, therefore, it is reduced to
$300. In addition, because the time charged is excessive for the issues involved in this
proceeding, the $300 is further reduced by one-third [to $100.00]." Moreover, the Commission
disallowed the sum of $2,462.50 "for . . . the Cities' secretarial and clerical support," stating no
basis for such action. Concerning the past work done by Mr. Eklund, the Commission declared
as follows:



The Cities have not shown by a preponderance of the evidence that $15,487.50 for
206.5 hours of work performed by Richard Eklund was necessary and relevant to
the proceeding and it is therefore reduced to $7,500. In addition, because the time
charged is excessive for the issues involved in this proceeding, the amount of
$7,500 is further reduced by one-third [to $2,500.00].



 It appears the foregoing determinations were rendered superfluous because the
Commission found as follows in its final order:



In addition to the allowance of $5,995.64 in expenses, it is reasonable to allow the
recovery of $63,185 rather than the $113,881.25, the amount originally requested
for the Cities' consultant fees. This $63,185 includes the reduction of Mr.
Eklund's charges and the reduction of future estimated expenses for the Cities'
consultants.



 In the end, it appears the Commission allowed the Cities to recoup the consultants'
expenses of $5,995.64 together with $63,185 in past and future consultant fees, while disallowing
the balance claimed as a result of the consultants' work.

 In this instance as well, the affidavits supporting the costs claimed by the Cities
were uncontradicted and unimpeached, based on personal knowledge and expertise. We find in
them nothing inherently improbable or contradictory, and no other basis in the record upon which
the Commissioners might have rejected them to the extent they did. The record demonstrates that
the Commissioners simply disagreed with the amount of work that was reasonable in the case and
substituted their own conclusion ($63,185.00) for that contained in the affidavits ($113,881.25). 
Presumably the Commissioners' conclusion was based on the affidavits viewed in light of the
Commissioners' expertise and the whole record. Nevertheless, the Commissioners omitted to
state any basis, reason, or explanation upon which their conclusion rested. The record reflects
only that the Cities' claim for reimbursement was opaquely reduced, in the face of undisputed
evidence, to an amount the Commissioners thought reasonable. For the reasons given previously
in our discussion of the Cities' cost for attorneys' fees, we believe the Commissioners' conclusory
inferences are not supported by substantial evidence in light of the record as a whole.



City-Attorney Costs


 The Cities paid their respective city attorneys for work done in the 1991 municipal-rate proceedings. At the commencement of the de novo proceeding in the Commission, these
attorneys filed in the Commission their affidavits dated October 15 and 16, 1991. The affidavit
testimony was not contradicted or impeached. The testimony demonstrates that the Cities paid
the attorneys the aggregate sum of $8,218.25 for work done before the Commission proceeding
began, basically their work in the municipal-rate proceedings. (2) The attorneys' invoices to the
Cities were verified and affixed to the affidavits. These invoices and affidavits support the
reasonableness and necessity of the $8,218.25 in costs incurred by the Cities.

 In addition, the three attorneys' affidavits set forth their estimates of what their
future work in the case would cost their respective municipal clients after October 15 and 16,
1991, the dates of the affidavits. The aggregate amount of these estimates of future city expenses
was $2,800. The city attorneys did not describe in their affidavits the amount of such future work
or its nature. In almost the same language, each affidavit stated as follows:



In addition, it is anticipated that expenses in the additional amount of
approximately [$1,500.00, $500.00, and $800.00] will be incurred in the future by
the [City of Nederland, Groves, and Port Neches] in connection with this matter. 
Such amount would be based on the same hourly charges as indicated herein.



 The Commission allowed the Cities to recoup from the Company the sums paid
under the three attorneys' invoices for past work, a total of $8,218.25. The Commission refused
recoupment of the amount of future expense estimated by the three attorneys in their affidavits of
October 15 and 16, 1991, a combined amount of $2,800, representing an aggregate of twenty-five
hours of work for the three attorneys.

 The proposal for decision contains the observation that the three city attorneys "did
not describe" in their affidavits "what type of work would be necessary in the future;" and for that
reason the examiners found the future expenses of $2,800 "too speculative." And, in the words
of proposed finding of fact 70, the claimed future expenses "are unreasonable because they are
speculative." Although the record is not entirely clear on the point, the Commission apparently
adopted in its final order all the findings of fact and conclusions of law set out in the proposal for
decision, save as these were amended or substitutions made for them in the final order itself. We
cannot find that the Commission's final order either amended finding of fact 70 or ordered a
substitute for it. Apparently, then, the Commission adopted the reasoning and grounds reflected
in the proposed finding of fact 70.

 In this instance, we believe the whole record demonstrates a reasonable basis for
the Commission's action in refusing to allow the Cities to recoup as reasonable costs the
$2,800.00 estimated by the city attorneys as their future charges for work done in the case after
the dates of their affidavits (October 15 and 16, 1991). Unlike the affidavits filed in support of
the costs incurred by reason of the work of Butler, Porter & Gay and Diversified Utility
Consultants, Inc., the affidavits filed by the city attorneys were never supplemented after the
initial filing of the case in the Commission. It is implicit in the other affidavits, filed in support
of the costs associated with Butler, Porter & Gay and Diversified Utility Consultants, that the city
attorneys did, indeed, work on the case during its progress in the Commission. But this work by
the city attorneys was never quantified when it easily could have been toward the end of the
Commission proceeding. Thus, the city attorneys' estimate was inherently speculative when it
need not have been and the Commission could reasonably reject it on that ground in light of the
record as a whole. This is precisely the action taken by the Commission and we see no error in
that regard. We therefore sustain the Cities' points of error one through four, except as to the
costs associated with the Cities' respective city attorneys. 



TEMPORARY RATES


 On filing its appeal to the Commission, the Company requested that the
Commission set aside the rates fixed by the Cities in the municipal-rate proceedings. Within a
few days, the Commission granted the request without holding an evidentiary hearing, conditioned
upon the Company's filing a bond to secure against any deficit resulting from the rates finally
fixed by the Commission and the rates the Company was permitted to charge pendente lite. The
Company filed the requisite bond and charged its original rates on a temporary or interlocutory
basis.

 The Cities contend the terms of article 6058 of the Revised Civil Statutes 
prohibited the Commission's taking such action without an evidentiary hearing. The statute
provides as follows:



 When a city government has ordered any existing rate reduced, the gas
utility affected by such order may appeal to the Commission by filing with it on
such terms and conditions as the Commission may direct, a petition and bond to
review the decision, regulation, ordinance, or order of the city, town or
municipality. Upon such appeal being taken the Commission shall set a hearing
and may make such order or decision in regard to the matter involved therein as
it may deem just and reasonable. The Commission shall hear such appeal de novo.



Tex. Rev. Civ. Stat. Ann. art. 6058 (West 1962) (emphasis added).

 We believe the Company and the Commission correctly interpret the statute when
they say the second sentence requires a final hearing, and the first sentence refers to the setting
of temporary rates. See Arkansas Louisiana Gas Co. v. Railroad Comm'n, 586 S.W.2d 643, 646
(Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). The Cities contend only that the statute
unambiguously required an evidentiary hearing before the Company might be allowed to
implement the temporary rates. We hold that is not a correct interpretation of the statute. The
Cities do not complain that the Commission's action, taken without a hearing and over their
objection, was an abuse of discretion that prejudiced their substantial rights in the circumstances
existing. Had they made such a complaint, a hearing might have been required on a ground apart
from the statute.

 The Cities imply that the Commission's actions violated their due-process rights. 
Assuming that a municipality may make that claim, we reject it because the demands of due
process of law do not require a hearing at the initial stage, or at any particular point in an
administrative proceeding, so long as a hearing is held before the final order becomes effective. 
See Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div. of Dep't of Labor, 312 U.S.
126, 152-53 (1941). This also is the meaning implicit in APA section 2001.051. See 1 Frank E.
Cooper, State Administrative Law at 287 (1965).

 For the reasons given, we reverse the Commission's final order and the district-court judgment; and we remand the cause to the district court with instructions that it be remanded
to the Commission for proceedings not inconsistent with our opinion. 



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Reversed and Remanded

Filed: June 1, 1994 

Publish
1.   All citations in this opinion are to the current Administrative Procedure Act rather than
the former Administrative Procedure and Texas Register Act because the recent codification
did not substantively change the law. Act of May 7, 1993, 73d Leg., R.S., ch. 268, § 47,
1993 Tex. Gen. Laws 583, 986; Administrative Procedure Act, Tex. Gov't Code Ann.
§§ 2001.001-.902 (West 1994).
2.   The City of Port Arthur filed no affidavit in support of the amount claimed for its city
attorney. Thus, the Commission could properly deny for want of evidence any claim for
reimbursement by the municipality. For the purpose of this section of our opinion, the City
of Port Arthur is excluded from the discussion.